**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NORMA U.S. HOLDING LLC,

                Plaintiff,

    v.

XINGTAI JINWO COMMERCIAL
TRADING CO., LTD.,

                Defendant.

Case No. 2:25-cv-13619-RJW-CI

Hon. Robert J. White
Mag. Curtis Ivy, Jr.

**OPINION AND ORDER GRANTING NORMA'S MOTION
FOR A TEMPORARY RESTRAINING ORDER (ECF No. 4)**

This is a patent infringement case in which Plaintiff Norma U.S. Holding LLC ("Norma") alleges that Defendant Xingtai Jinwo Commercial Trading Co., Ltd. ("Jinwo") infringes U.S. Patent No. 7,520,539 (the "'539 Patent") for a "Pipe Clamp with Gasketed Center Rib."

Presently before the Court is Norma's motion for a temporary restraining order, which Norma asks the Court to issue without notice to Jinwo, arguing that immediate, ex parte injunctive relief is necessary to fully protect Norma's patent rights. ECF No. 4. Pursuant to Local Rule 7.1(f)(2), the Court will decide Norma's motion without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons stated in this

1

Opinion and Order, the Court **GRANTS** Norma's motion for a temporary restraining order.

## I.    PROCEDURAL HISTORY

On November 13, 2025, Norma filed a Complaint for patent infringement against Jinwo, alleging that Jinwo infringes the '539 Patent in connection with sales of an infringing copy of a best-selling Norma pipe clamp covered by the '539 Patent. ECF No. 1. On the same day, Norma filed its present motion, asking the Court to issue an ex parte temporary restraining order under Federal Rule of Civil Procedure 65(b). ECF No. 4.

## II.    BACKGROUND

This case involves pipe clamps commonly used to connect pipes in vehicle exhaust systems. In addition to providing pull-apart strength and ease of disassembly for maintenance and repair, the pipe clamps feature an improved design for sealing against exhaust gas leakage at the connection between two pipes.

### A.    '539 Patent

The '539 Patent, titled "Pipe Clamp with Gasketed Center Rib," was issued by the United States Patent and Trademark Office (the "USPTO") on April 21, 2009. The '539 Patent has sixteen claims, including independent Claims 1, 14, and 16. In the Complaint, Norma alleges that Jinwo infringes at least independent Claims 1 and 16 (the "asserted claims"). For purposes of demonstrating a likelihood of

2

infringement in support of its motion for a temporary restraining order, Norma

focuses on Claim 1. Claim 1 of the '539 Patent recites:

> **1.** A pipe clamp for connecting two tubular bodies, comprising:
> a band extending circumferentially and continuously from a first end to a second end and having a pair of axial ends, said band including a radially protruding rib located inwardly of said axial ends and extending continuously at least part way between said first and second ends, wherein said first and second ends of said band comprise radially extending flanges;
> a tightening mechanism connected to said flanges to draw said first and second ends toward and away from each other for tightening and loosening of said band;
> a split sleeve disposed within said band and located at least within said rib such that, when tightened, said band compresses said sleeve via direct contact between a radially inward surface of said rib and an outer surface of said sleeve, said split sleeve extending circumferentially from a first mating end to a second mating end; and
> a gasket disposed radially within said sleeve such that said gasket is located at least partially within said rib.

'539 Patent 10:53-11:5.

As set forth in the claim language, Claim 1 recites a pipe clamp featuring a

"gasketed center rib" design. As the basic claim elements, the claim language recites

four components: (a) a "band," which includes a "radially protruding rib" and

"radially extending flanges"; (b) a "tightening mechanism" connected to the flanges;

(c) a "split sleeve" within the rib, which includes a "first mating end" and a "second

mating end"; and (d) a "gasket" within the sleeve.

An embodiment of the recited pipe clamp is shown in Figure 5 of the '539 Patent, reproduced below. As shown, the pipe coupler (200)[1] has a four-component construction based on a band (202). The band (202) is made by forming a flat band of sheet steel into an open loop, and includes a pair of radially extending flanges (214, 216) at its ends, and a radial protruding rib (230) along its length. In addition to the band (202), the pipe coupler (200) includes an external tightening mechanism (204) connected to the flanges (214, 216), as well as an internal split sleeve (206) within the rib (230), and an internal gasket (208) within the split sleeve (206).



**Figure 5**

---

[1] The '539 Patent explains that the term "pipe clamp" refers to both "band clamps" and "pipe couplers." *Id.* 3:19-20. The two products include the same basic components, but a band clamp "clamps around overlapping pipes connected in a telescopic fashion," while a pipe coupler "fastens around adjoining pipes connected in an end-to-end manner." *Id.* 3:15-19.

The tightening mechanism (204) is configured to draw the ends of the band (202) toward (and away) from one another by the flanges (214, 216) to tighten (and loosen) the band (202). The split sleeve (206) and the gasket (208) include angularly offset pairs of mating ends (222, 224 and 270, 272). When the band (202) is fully tightened over the connection between two pipes, the mating ends (222, 224 and 270, 272) of the split sleeve (206) and the gasket (208) are drawn into sealing engagement to provide a gas-tight seal.

### B.    Norma's Factual Allegations[2]

Plaintiff Norma is a Delaware company with a place of business in Auburn Hills, Michigan. ECF No. 1, PageID.1 (Compl. ¶ 1). Norma sells pipe clamps, including a pipe clamp covered by the '539 Patent (the "patented pipe clamp"). *Id.*, PageID.5 (Compl. ¶ 15). The patented pipe clamp, known as the 55W pipe clamp, is exceedingly popular and one of Norma's best-selling pipe clamps, and Norma has achieved significant commercial success in selling the patented pipe clamp. *Id.*; ECF No. 7, PageID.103 (Lombardi Decl. ¶¶ 4-5).

Defendant Jinwo is a Chinese entity with a place of business in Xingtai City, Hebei Province, China. *Id.*, PageID.1 (Compl. ¶ 2). Jinwo sells several pipe clamps

---

[2] The Court takes the following information from the Complaint (ECF No. 1), Norma's motion for a temporary restraining order (ECF No. 4), and supporting declarations from Jennifer Bossory, Norma's Corporate Counsel (ECF No. 5), and Jeff Lombardi, Norma's Vice President of Business Development, Industrial Applications (ECF No. 7).

on the Jinwo Parts website.[3] ECF No. 4, PageID.73 (Mot. p. 17). Norma alleges that Jinwo infringes the '539 Patent in connection with sales of a pipe clamp designated as the "Jinwo DPF Filter Clamp Kit And Gasket Kit Directly Replaceable With OE Clamps And Gaskets" (the "accused pipe clamp").[4] ECF No. 1, PageID.5-6 (Compl. ¶ 16). In addition to selling the accused pipe clamp to United States customers on the Jinwo Parts website, Jinwo sells to resellers, who sell the accused pipe clamp to United States customers on other ecommerce platforms. ECF No. 4, PageID.57 (Mot. p. 1).

Jinwo's accused pipe clamp is a virtual copy of Norma's patented pipe clamp. *Id.* Norma alleges that, with knowledge of Norma's patent rights, and without Norma's authorization or consent, Jinwo copied the patented pipe clamp to capitalize on Norma's success, and will continue selling the accused pipe clamp unless enjoined by the Court. ECF No. 1, PageID.9-10 (Compl. ¶¶ 37-38, 41); ECF No. 4, PageID.60 (Mot. p. 4); ECF No. 5, PageID.99 (Bossory Decl. ¶ 4). In connection with Norma's loss of marketplace exclusivity, the accused pipe clamp has decreased Norma's market share, and is not only causing Norma to lose significant sales of the patented pipe clamp, but also eroding the price that Norma can charge for the patented pipe clamp. ECF No. 7, PageID.103-104 (Lombardi Decl. ¶¶ 6-8).

---

[3] *See* https://www.jinwoparts.com/clamp/.
[4] *See* https://www.jinwoparts.com/clamp/v-band-clamp/jinwo-dpf-filter-clamp-kit-and-gasket-kit.html.

### C.   Norma's Patent Infringement Claims

In the Complaint, Norma asserts claims of: (1) direct infringement under 35 U.S.C. § 271(a); and (2) induced infringement under 35 U.S.C. § 271(b). Norma alleges that Jinwo has directly infringed the '539 Patent by offering to sell and selling the accused pipe clamp in the United States, and by importing the accused pipe clamp into the United States. ECF No. 1, PageID.9 (Compl. ¶ 37). Moreover, Norma alleges that Jinwo has induced infringement of the '539 Patent by customers of the accused pipe clamp. *Id.* (Compl. ¶ 38). In connection with its patent infringement claims, Norma alleges that Jinwo had knowledge of the '539 Patent and knowledge that using the accused pipe clamp constitutes infringement. *Id.*, PageID.9-10 (Compl. ¶¶ 38, 41). As relief for Jinwo's allegedly willful infringement, Norma requests an award of damages, a trebling of damages, attorney's fees, costs and interest, a preliminary injunction, a permanent injunction, and "further relief as the Court deems just and proper." *Id.*, PageID.10-11 (Compl. ¶¶ C-H).

### III.   JURISDICTION

The Court has subject matter jurisdiction over Norma's claims in this patent infringement case against Chinese entity Jinwo pursuant to 28 U.S.C. §§ 1331 (conferring federal question jurisdiction over actions arising under federal law), 1332(a)(2) (conferring diversity jurisdiction over actions between U.S. citizens and

7

foreign citizens), and 1338(a) (conferring jurisdiction over actions arising under Acts of Congress relating to patents).

Furthermore, Jinwo is subject to the personal jurisdiction of the Court. As alleged by Norma in the Complaint, Jinwo operates the Jinwo Parts website, through which it has offered the accused pipe clamp for sale to Michigan customers, including customers in the Eastern District of Michigan:

> This Court has personal jurisdiction over Defendant because Defendant directly targets business activities toward consumers in the United States, including in the State of Michigan through, at least, by offering for sale through its website. Defendant has committed acts of patent infringement giving rise to the cause of action raised by this Complaint in Michigan and in this judicial district.

ECF No. 1, PageID.2 (Compl. ¶ 4).

## IV.   LEGAL STANDARDS

Under the Patent Act, a patent grants the patentee the right to exclude others from practicing the patented invention. 35 U.S.C. § 154(a)(1). Thus, Section 271(a) of the Patent Act, the provision on direct infringement, provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." *Id.* § 271(a). *See also id.* § 271(b)-(c) (codifying theories of liability for induced infringement and contributory infringement). "A patent is infringed if any claim is infringed, for each claim is a

8

separate statement of the patented invention." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995) (citation omitted). As a remedy for infringement, Section 283 of the Patent Act provides that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

Federal Rule of Civil Procedure 65 governs the procedures for preliminary injunctions and temporary restraining orders. A temporary restraining order is a limited duration preliminary injunction, sometimes issued without notice to the adverse party, that preserves the status quo pending a preliminary injunction hearing in order to avoid irreparable harm in the interim. Fed. R. Civ. P. 65(a)-(b). As explained by the Supreme Court, ex parte temporary restraining orders "are no doubt necessary in certain circumstances" but "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, Loc. No. 70*, 415 U.S. 423, 439 (1974).

In accordance with the jurisprudence of the Court of Appeals for the Federal Circuit, district courts adjudicating patent cases apply the law of the Federal Circuit to questions pertaining to patent law and the law of the regional circuit, here, the Court of Appeals for the Sixth Circuit, to procedural questions. *Trebro Mfg., Inc. v.*

*FireFly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014). Whether to grant or deny a motion for a preliminary injunction or a temporary restraining order under Rule 65 is a procedural question governed by the law of the regional circuit. *Id.* However, the Federal Circuit gives "dominant effect" to Federal Circuit precedent applying generally applicable standards "insofar as it reflects considerations specific to patent issues." *Id.* (quoting *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed. Cir. 1998)).

### A.    Temporary Restraining Order

The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) ("*NEOCH*"). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As with a preliminary injunction, the Sixth Circuit has held that a district court must consider four factors in determining whether to issue a temporary restraining order: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury in the absence of a temporary restraining order; (3) whether a temporary restraining order would cause substantial harm to others; and (4) whether the public interest would be served by a temporary restraining order. *NEOCH*, 467 F.3d at 1009. *See also Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction

10

must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

"Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). "As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017). *See also Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together."). "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the [temporary restraining order]." *NEOCH*, 467 F.3d at 1009.

### B.    Ex Parte Relief

Under Rule 65, a temporary restraining order is the only form of injunctive relief that a district court may issue without notice to the adverse party. *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) ("*FTSS*") (citing Fed. R. Civ. P. 65(b)). As prerequisites for ex parte relief, Rule 65(b) requires the movant

11

to make a sufficient showing of both irreparable injury and the reasons why notice should not be required:

> (b) TEMPORARY RESTRAINING ORDER.
> (1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B). "The stringent restrictions … on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose*, 415 U.S. at 438-39.

12

## V.    ANALYSIS

In its motion, Norma requests an ex parte temporary restraining order under Federal Rule of Civil Procedure 65(b).[5] Norma asks the Court to issue an order without notice to Jinwo that would restrain Jinwo's continued trade in the accused pipe clamp, arguing that immediate, ex parte injunctive relief is necessary to achieve an effective early order that would stop ongoing infringement and fully protect Norma's patent rights. Below, the Court will consider whether ex parte relief is warranted in this case. Then, the Court will consider and balance the four factors that a district court must consider in determining whether to issue a temporary restraining order in light of the current record, and determine whether the factors support the issuance of a temporary restraining order in this case.

### A.    Norma's Arguments

Norma's arguments for immediate, ex parte injunctive relief follow from three basic contentions, all of which relate to Jinwo being a Chinese entity, and particularly one who allegedly willfully infringed the '539 Patent.

---

[5] To be more exact, Norma requests an ex parte temporary restraining order under Federal Rule of Civil Procedure 65(b) *and then* a preliminary injunction under Federal Rule of Civil Procedure 65(a). As best understood by the Court, Norma requests a temporary restraining order pending service of process on Jinwo, followed by a preliminary injunction during the pendency of this case. The Court will defer a decision on Norma's motion as to its request for a preliminary injunction until such time as the Court holds a hearing as required by Rule 65(b)(3), with notice to Jinwo as required by Rule 65(a)(1).

First, pointing out that Jinwo allegedly copied the patented pipe clamp to capitalize on Norma's success, Norma represents that Jinwo will continue selling the accused pipe clamp unless enjoined by the Court. Norma argues that injunctive relief is therefore necessary to stop ongoing infringement, along with the associated continued loss of marketplace exclusivity and resultant price erosion, lost sales, and loss in market share.

Second, Norma explains that it will take Norma many months to effectuate service of process on Jinwo. In addition to pointing out that a preliminary injunction requires personal jurisdiction, and that personal jurisdiction requires service of process, Norma assumes that the Hague Service Convention governs service of process on Jinwo. Citing both its counsel's experience and anecdotal evidence, Norma explains that it takes at least six months for plaintiffs to serve process on China-based defendants by the means of service authorized by the Hague Service Convention. As opposed to a preliminary injunction, Norma argues that immediate relief in the form of a temporary restraining order is therefore necessary to achieve an effective early order.

Third, Norma represents that, if given notice of Norma's motion before being enjoined by the Court, Jinwo will dump its inventory of the accused pipe clamp into the United States marketplace. Moreover, Norma represents that, after dumping its infringing inventory, Jinwo will circumvent a monetary judgment. According to

14

Norma, Jinwo will not only evade service of process, but also transfer, withdraw, or otherwise conceal financial assets. Norma argues that ex parte relief is therefore necessary to fully protect Norma's patent rights.

### B.    Ex Parte Relief

As prerequisites for ex parte relief, Federal Rule of Civil Procedure 65(b) requires the movant to make a sufficient showing of both irreparable injury and the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1)(A)-(B). Applying the language of Rule 65(b), the Sixth Circuit has held that two circumstances might warrant ex parte relief. *FTSS*, 11 F.3d at 650. "The normal circumstance for which the district court would be justified in proceeding ex parte is where notice to the adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found." *Id.* "There is, however, another limited circumstance for which the district court may proceed ex parte: where notice to the defendant would render fruitless further prosecution of the action." *Id.*

In requesting ex parte relief, Norma invokes the second circumstance. Specifically, against the background of Jinwo being a Chinese entity who allegedly willfully infringed the '539 Patent, Norma cites Norma's inability to serve process on Jinwo in a timely manner, coupled with the risk that Jinwo will dump its infringing inventory and thereafter circumvent a monetary judgment. As stated by Norma:

> Pursuant to Fed. R. Civ. P. 65(b)(1)(B), undersigned counsel certifies that Defendant has not been given notice of this Motion and the TRO should be entered without notice because Defendant is likely to evade process, or move critical evidence (including their inventory of infringing products). Service upon Defendant may only be had under the Hague Convention and requires many months to effectuate. Defendant may also transfer, withdraw, or otherwise conceal financial assets.

ECF No. 4, PageID.48-49.

Based on Norma's statement, and related representations concerning the need for immediate injunctive relief before Jinwo is given notice of Norma's motion, the Court finds that ex parte relief is warranted in this case. Specifically, if given notice, Jinwo will likely take advantage of the time it will take Norma to effectuate service of process to dump its inventory of the accused pipe clamp into the United States marketplace. Moreover, after dumping its infringing inventory, Jinwo will likely take advantage of being located in China to circumvent a monetary judgment by evading service of process and concealing financial assets. As such, without ex parte relief, Norma would be irreparably injured not only through continued price erosion, lost sales, and loss in market share, but also in its ability to recover damages to offset the further harm to its competitive position. Accordingly, the Court will **GRANT** Norma's motion for a temporary restraining order as to its request for ex parte relief.

16

## C.     Likelihood of Success on The Merits

Having found that ex parte relief is warranted, the first factor that the Court must consider in determining whether to issue a temporary restraining order is whether Norma has a strong likelihood of success on the merits. Norma argues that it has a strong likelihood of success on the merits of its patent infringement claims because the evidence of record establishes that Jinwo infringes at least Claim 1 of the '539 Patent.

The Federal Circuit has instructed that an infringement analysis entails two steps: (1) construing the asserted claims; and (2) comparing the properly construed claims to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). The words of the claim are generally given their "ordinary and customary" meaning, which in the patent context is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "An accused product infringes a claim if it embodies each claim element or its equivalent." *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 784 (Fed.

17

Cir. 2019). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).

With respect to the first step of the infringement analysis, Norma argues that Claim 1 needs no construction, and that the claim terms should be given their plain and ordinary meanings. Norma argues that this is a case where the ordinary meanings of the claim terms are "readily apparent," meaning that construing Claim 1 need only involve "the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

With respect to the second step of the infringement analysis, Norma presents its infringement contentions in the form of a claim chart applying Claim 1 to the accused pipe clamp. In the claim chart, Norma reproduces the claim language, and annotates images of the accused pipe clamp to identify the components that allegedly correspond to the claim elements. Specifically, as shown in the Court's annotated image of the accused pipe clamp,[6] reproduced below, Norma alleges that the accused pipe clamp includes: (a) the recited "band," including the "radially protruding rib"

---

[6] In the claim chart, Norma presents four separate annotated images, one each for Claim 1's four paragraphs. The single annotated image prepared by the Court is essentially a composite version of the four annotated images presented by Norma.

and the "radially extending flanges" thereof; (b) the recited "tightening mechanism"; (c) the recited "split sleeve," including the "first mating end" and the "second mating end" thereof; and (d) the recited "gasket." ECF No. 4, PageID.66-70 (Mot. pp. 10-14).



At this stage of the case, the Court finds that Norma has demonstrated a strong likelihood of success on the merits of its patent infringement claims. Having reviewed the claim language in the context of the '539 Patent, the Court agrees with Norma that Claim 1 needs no construction, and that the claim terms should be given their plain and ordinary meanings. Moreover, having reviewed the claim chart, the Court does not perceive any particular weaknesses in Norma's infringement contentions. Applying the commonly understood meanings of the claim terms, it appears to the Court that the identified components of the accused pipe clamp satisfy the claim language in each of the four paragraphs of Claim 1. As shown above, with

respect to the first paragraph, the identified band satisfies the claim language reciting "a band extending circumferentially and continuously from a first end to a second end and having a pair of axial ends, said band including a radially protruding rib located inwardly of said axial ends and extending continuously at least part way between said first and second ends, wherein said first and second ends of said band comprise radially extending flanges." Next, with respect to the second paragraph, the identified tightening mechanism satisfies the claim language reciting "a tightening mechanism connected to said flanges to draw said first and second ends toward and away from each other for tightening and loosening of said band." Then, with respect to the third paragraph, the identified split sleeve satisfies the claim language reciting "a split sleeve disposed within said band and located at least within said rib such that, when tightened, said band compresses said sleeve via direct contact between a radially inward surface of said rib and an outer surface of said sleeve, said split sleeve extending circumferentially from a first mating end to a second mating end." Lastly, with respect to the fourth paragraph, the identified gasket satisfies the claim language reciting "a gasket disposed radially within said sleeve such that said gasket is located at least partially within said rib."

As Norma points out, a strong likelihood of infringement is unsurprising given that Jinwo's accused pipe clamp is a "virtual copy" of Norma's patented pipe clamp. ECF No. 4, PageID.57 (Mot. p. 1). Accordingly, the Court finds that the first factor

20

of whether Norma has a strong likelihood of success on the merits weighs in favor of issuance of a temporary restraining order.

### D.    Irreparable Injury

The second factor that the Court must consider in determining whether to issue a temporary restraining order is whether Norma would suffer irreparable injury in the absence of a temporary restraining order. Settling a previously open question, the Federal Circuit has held that a patentee seeking injunctive relief is not entitled to a presumption of irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("We take this opportunity to put the question to rest and confirm that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief.") (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006)). But the Federal Circuit has also made clear that "it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude." *Id.*

Under Federal Circuit precedent, a finding of irreparable injury often follows from competition between the parties for sales of products practicing the patented invention. "The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (citing 35 U.S.C. § 154(a)(1)). "Where two companies are in competition against one another, the patentee suffers the harm —

21

often irreparable — of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). "Irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales and erosion in reputation and brand distinction." *Id.* at 1344. For instance, the Federal Circuit has instructed that price erosion, loss of business opportunities, loss of goodwill, and damage to reputation "are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Similarly, the Federal Circuit has held that a patentee may demonstrate irreparable injury by showing direct competition between the parties, the patentee's loss in market share, and the patentee's loss of access to potential customers. *Robert Bosch*, 659 F.3d at 1151. Moreover, the defendant's inability to satisfy a monetary judgment can also favor a finding of irreparable injury. *Id.* at 1154-55.

In accordance with these principles, the Court finds that Norma would suffer irreparable injury in the absence of a temporary restraining order. As Norma points out, given the direct competition between the parties, Norma has been, and would continue to be, irreparably injured through competitive harms, including price erosion, lost sales, and loss in market share. While Norma has achieved significant commercial success in selling the patented pipe clamp, Jinwo's presence in the marketplace with the accused pipe clamp is preventing Norma from exercising its

22

right to exclude others from selling pipe clamps covered by the '539 Patent. ECF No. 7, PageID.103 (Lombardi Decl. ¶¶ 5-6). In connection with Norma's loss of marketplace exclusivity, the accused pipe clamp is eroding the price that Norma can charge for the patented pipe clamp. *Id.* (Lombardi Decl. ¶ 7). Furthermore, the accused pipe clamp is causing Norma to lose significant sales of the patented pipe clamp, and has decreased Norma's market share. *Id.*, PageID.104 (Lombardi Decl. ¶ 8). Moreover, the irreparable injury Norma would suffer is exacerbated by the risk that Jinwo will dump its infringing inventory and thereafter circumvent a monetary judgment. Accordingly, the Court finds that the second factor of whether Norma would suffer irreparable injury in the absence of a temporary restraining order weighs in favor of issuance of a temporary restraining order.

### E.   Substantial Harm to Others

The third factor that the Court must consider in determining whether to issue a temporary restraining order is whether a temporary restraining order would cause substantial harm to others. The third factor deals with the hardship to the adverse party, and requires the movant to show that the balance of equities tips in its favor. *Winter*, 555 U.S. at 374. In balancing the hardships between the parties, the Federal Circuit has instructed that the defendant cannot claim hardship in the harm to its business from discontinuing sales of an infringing product. *Robert Bosch*, 659 F.3d at 1156 ("A party cannot escape an injunction simply because it is smaller than the

patentee or because its primary product is an infringing one.") (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.")).

Having found that Norma has demonstrated a strong likelihood of success on the merits, the Court finds that a temporary restraining order would not cause substantial harm to Jinwo. As Norma points out, although the requested injunctive relief would prohibit Jinwo from continuing to sell the accused pipe clamp, Jinwo would be free to keep selling the other pipe clamps it sells on the Jinwo Parts website. Jinwo would only have to stop selling what appears to be an infringing product, which it has no legal right to do in the first place. As well, the Court finds that the hardship Norma would face in the absence of a temporary restraining order outweighs any harm to Jinwo, and therefore tips the balance of equities in Norma's favor. As Norma points out, "requiring [Norma] to compete against its own patented invention, with the resultant harms described above, places a substantial hardship on [Norma]." *Id.* Specifically, allowing Jinwo to continue selling the accused pipe clamp would further the harm to Norma's competitive position through continued price erosion, lost sales, and loss in market share. Accordingly, the Court finds that the third factor of whether a temporary restraining order would cause substantial harm to others weighs in favor of issuance of a temporary restraining order.

24

### F.      Public Interest

The fourth factor that the Court must consider in determining whether to issue a temporary restraining order is whether the public interest would be served by a temporary restraining order. The Federal Circuit has explained that "the touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010), *aff'd on other grounds*, 564 U.S. 91 (2011). Generally, in cases "absent any other relevant concerns," the Federal Circuit has instructed that "the public is best served by enforcing patents that are likely valid and infringed." *Abbott Lab'ys v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).

The Court finds that the public interest would be served by a temporary restraining order. As Norma points out, the requested injunctive relief would benefit the public interest by protecting Norma's patent rights. On the other hand, the requested injunctive relief would have little, if any, adverse impact on the public interest in preserving access to the patented invention. Although the requested injunctive relief would prohibit Jinwo from continuing to sell the accused pipe clamp, the patented pipe clamp would still be available from Norma. Accordingly, the Court finds that the fourth factor of whether the public interest would be served

by a temporary restraining order weighs in favor of issuance of a temporary restraining order.

### G.      Balancing and Conclusion

As set forth above, because Norma has demonstrated a strong likelihood of success on the merits of its patent infringement claims, and Norma would suffer irreparable injury in the absence of a temporary restraining order through continued competitive harms, the Court finds that the first factor and the second factor weigh in favor of issuance of a temporary restraining order. Moreover, because a temporary restraining order would not cause substantial harm to Jinwo, who would only have to stop selling what appears to be an infringing product, and the hardship Norma would face in the absence of a temporary restraining order outweighs any harm to Jinwo, the Court finds that the third factor weighs in favor of issuance of a temporary restraining order. As well, because the public interest would be served by a temporary restraining order, the Court finds that the fourth factor weighs in favor of issuance of a temporary restraining order.

After considering and balancing the factors in light of the current record, the Court determines that the factors support the issuance of a temporary restraining order in this case. Accordingly, the Court will **GRANT** Norma's motion for a temporary restraining order as to the requested injunctive relief.

## VI. CONCLUSION

For the reasons stated in this Opinion and Order, the Court **GRANTS** Norma's motion for a temporary restraining order.

The Court hereby **ORDERS**:

1) Defendant Xingtai Jinwo Commercial Trading Co., Ltd. ("Jinwo"), its officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, who receive actual notice of this Opinion and Order, are temporarily enjoined and restrained from making, using, offering for sale, selling within the United States, or importing into the United States, any pipe clamp having the configuration of its Jinwo DPF Filter Clamp Kit And Gasket Kit Directly Replaceable With OE Clamps And Gaskets, or any product not colorably different therefrom.

2) The temporary restraining order is granted on May 5, 2026 at 11:00 AM and ends in fourteen (14) calendar days on May 19, 2026.

3) Within fourteen (14) calendar days of entry of this Opinion and Order, Norma shall post a bond pursuant to Federal Rule of Civil Procedure 65(c) in the amount of Five Thousand U.S. Dollars ($5,000), as security for the payment of damages to which any person may be entitled for a

wrongful injunction or restraint hereunder, during the pendency of this action, or until further order of the Court.

4) Norma shall attempt to notify Jinwo of the issuance of this Opinion and Order, the filing of the Complaint, and the filing of Norma's motion for a temporary restraining order, including any supporting documents, by sending them via email to info@jinwoparts.com and via overnight courier to NO. 6, Baiquan Avenue, Xindu District, Xingtai City, Hebei Province, China, 054000.

5) The Court defers a decision on Norma's motion as to its request for a preliminary injunction under Federal Rule of Civil Procedure 65(a) until the earlier of (a) Norma effectuating service of process on Jinwo or (b) Norma securing Jinwo's consent to participate in the proceedings in this case. At such time, the Court will hold a hearing on Norma's requested preliminary injunction as required by Federal Rule of Civil Procedure 65(b)(3), at which Jinwo and/or any other affected persons may challenge the appropriateness of this Opinion and Order and move to dissolve or modify the temporary restraining order.

28

**SO ORDERED.**

Dated: May 5, 2026

s/Robert J. White_____
The Honorable Robert J. White
United States District Judge

29